**Robins Kaplan LLP**
Jason R. Fair, Bar No. (279699)
JFair@RobinsKaplan.com
Nargess N. Hadjian, Bar No. (328428)
NHadjian@RobinsKaplan.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

Attorneys for Plaintiffs
SOUTHERN CALIFORNIA ELECTRICAL FIRM, JASON FARR, DAVID KANOWSKY, AND ROB MORGAN

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SOUTHERN CALIFORNIA ELECTRICAL FIRM, a California corporation; JASON FARR, an individual; DAVID KANOWSKY, an individual; and ROB MORGAN, an individual,

Plaintiffs,

v.

SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:22-cv-3937

**FIRST AMENDED COMPLAINT FOR:**

**(1) VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2);**

**(2) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**

**(3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP; AND**

**(4) VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200)**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Defendant SOUTHERN CALIFORNIA EDISON COMPANY ("Edison" or "Defendant") is restricting competition among contractors in the electric utility services market within its monopolized territory.

2. Edison is the only electrical utility service provider in more than one-hundred-eighty incorporated cities, fifteen counties, thirty-three unincorporated communities, thirty-four census designated places and thirteen federally recognized tribal lands, all within the 50,000 square miles of service areas highlighted in the image below ("SCE Territory").

3. This case concerns Edison's anti-competitive behavior to restrict which contractors may provide electrical contracting services within the SCE Territory.

4. It is alleged that Edison is carrying out two distinct wrongs against the Plaintiffs:

a. Edison is implementing an unreasonable prequalification requirement under Electric Tariff Rules 15 and 16--Electrical Distribution Line Extensions and Service Line Extensions--that is restricting competition in the service field of providing consumers with applicant design and install work; and

b. Edison is interfering with the Plaintiffs' contracts to provide consumers of Edison's electricity with consulting services relating to their electrical needs.

///

///

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. PARTIES

5. Plaintiff SOUTHERN CALIFORNIA ELECTRICAL FIRM, a California corporation ("SCEF") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of California, with its office and principal place of business located at 4002 Admirable Drive, Rancho Palos Verdes, California 90275. SCEF is licensed by the California State Contractors License Board as a C10 – Electrical and A- General Engineering Contractor.

6. Jason Farr ("Farr") is an individual and officer of SCEF residing in Rancho Palos Verdes, California 90275.

7. David Kanowsky ("Kanowsky") is an individual and officer of SCEF residing in Huntington Beach, California.

8. Robert Morgan ("Morgan") is an individual and officer of SCEF residing in Torrance, California.

9. Defendant Edison is a corporation organized, existing, and doing business under and by virtue of the laws of the State of California with its office and principal place of business located at 36748 Canyon Street, Yucaipa, California 92399. Edison generates, transmits, and distributes electric power as well as related services throughout Central, Coastal, and Southern California.

10. The true names of defendants designated as Does 1 through 10, inclusive, are presently unknown to Plaintiffs who therefore sues said defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to set forth their true names and capacities when ascertained.

11. Based upon its information and belief, Plaintiffs allege that each of the fictitiously named defendants is responsible for and has contributed to the matters herein related giving rise to the relief being sought by Plaintiffs as set forth below. When the identities, capacities, and activities of said defendants are ascertained, Plaintiffs will amend their Complaint to so allege.

12. Plaintiffs are informed and believes and thereon allege that at all times herein mentioned, each of the defendants, including the Doe defendants, was the agent or employee of each of the other defendants and at all times was acting within the scope and authority of said agency or employment.

## III. JURISDICTION AND VENUE

13. This First Amended Complaint is an action to recover damages pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 17200 of the California Business and Professions Code. This Court has subject matter jurisdiction over Plaintiffs' federal antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the California state law claims in the Second, Third, and Fourth Causes of Action pursuant to 28 U.S.C. § 1367.

14. The activities of Edison, as described herein, involve trade and commerce and/or are within the flow, are intended to, and have a direct, substantial, and reasonably foreseeable effect on domestic trade and commerce. This effect gave rise to Plaintiffs antitrust claims.

15. Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391 because Edison transacts business, is found in, and has an agent in this District.

## IV. TRADE AND COMMERCE

16. The conduct of Edison complained of herein has taken place in and affected trade and commerce in the SCE Territory by causing antitrust injuries and restraining competition in the applicant designer and applicant installer trades as intended by Tariff Rules 15 and 16 (the "Trade").

17. Edison's conduct complained of herein has directly, substantially, and foreseeably affected the Trade in that Edison has obstructed free and open competition in the Trade within the SCE Territory.

## V. FACTUAL ALLEGATIONS RELATING TO THE ANTI-TRUST CAUSES OF ACTION

### *A. Edison's Monopoly Power in The Relevant Market*

18. Edison is the sole electric utility provider that generates, transmits, and distributes electricity to approximately 15 million people within the SCE Territory. The SCE Territory, including the areas within the counties of Fresno, Imperial, Inyo, Kern, Kings, Los Angeles, Madera, Mono, Orange, Riverside, San Bernardino, Santa Barbara, Tuolumne, Tulare, and Ventura where Edison provides electricity, is considered the relevant geographic market for purposes of the anti-trust claim pled as the first cause of action in this complaint ("Relevant Geographic Market").

19. As the only electric utility provider within the Relevant Geographic Market, Edison

has power over all electrical contractor services within the Relevant Geographic Market.

20. The relevant product market for this anti-trust claim is services for the design and installation of new electrical utility lines and distribution line and service line extensions within the Relevant Geographic Market (the "Relevant Product Market").

21. Because of Edison's dominating presence in the Relevant Geographic Market, all electrical contractors who desire to participate in the Relevant Product Market must comply with any restrictions imposed by Edison.

22. Edison controls the Relevant Product Market through its implementation of Electrical Tariff Rules 15 and 16.

23. Under Tariff Rules 15 and 16, the applicant consumer (the property owner within the Relevant Geographic Market) may elect to design and install that portion of the new distribution line extension (Rule 15) and/or that portion of the new service extension (Rule 16) in accordance with Rule 15's outside applicant design and applicant installation options. The only alternative option to the consumer is to hire Edison directly for the design and/or installation services.

***B. Edison's Deceptive Unfair Business Practices and Anticompetitive Actions***

24. Edison currently implements a company-wide policy prohibiting certain terminated Edison employees from working, in any manner, on construction projects requiring Edison's approval, oversight, or involvement in any capacity.

25. In July 2018, Edison integrated its broader company-wide anti-competitive policy into Electrical Tariff Rules 15 and 16 by adding the following two conditions to its internal qualifications to be an Applicant Designer and/or Applicant Installer under Electrical Tariff Rules 15 and 16:

> (1) Must not currently, or in the future as a qualified designer, work as a design contractor (or its employee) that does business directly with SCE, or as a subcontractor to a firm that does business directly with SCE; and
>
> (2) Must not have been terminated from SCE under a classification that makes them ineligible for rehire or ineligible to work on SCE assets or systems.

Ex. A., Applicant Distribution Design Standards, Section 2.7(A).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

26. The Section 2.7(A) prequalification requirements are referred to as the ADS Policy.

27. By implementing the ADS Policy, Edison is removing its terminated employees and individuals that have worked for an approved Edison contractor from the Relevant Product Market without reasonable justification.

***C. Plaintiff's Injuries Due to The Unlawful ADS Policy***

28. Plaintiffs suffer injuries caused directly by Edison's unreasonable prequalification requirements in the ADS Policy that currently control which individuals and which contractors may participate in the Relevant Product Market.

29. Edison has disqualified the individual plaintiffs from being applicant installers and applicant designers under Section 2.7(A). And Edison has disqualified SCEF, the corporate plaintiff, by extending in practice Section 2.7(A) to SCEF due to Section 2.7(A)'s alleged disqualification of SCEF's individual shareholders.

***i. Farr, Kanowsky and Morgan are ex Edison employees.***

30. Farr, Kanowsky and Morgan were terminated from Edison in or around April 2017. As part of their termination, Edison issued a termination letter to these individuals that states, "as part of the conditions of your employment termination, you may never come back onto company property."

31. Farr, Kanowsky and Morgan are informed and allege that their termination was not based on their qualifications and ability to adequately perform electrical contracting services, including their credentials to participate in the Relevant Product Market but for Edison's unreasonable prequalification requirements.

32. Despite their training, experience, and qualifications to participate in Relevant Geographic Market as electrical contractors, including their credentials to participate in the Relevant Product Market, Farr, Kanowsky and Morgan were unable to obtain employment in the Relevant Market due to Edison's restrictive policies.

33. Farr, Kanowsky and Morgan started SCEF due, in part, to Edison's ability to push them out of the Relevant Geographic Market.

***ii. SCEF performs services in the Relevant Geographic Market and the***

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

***Relevant Product Market.***

34. SCEF contracts with consumers in the Relevant Geographic Market to provide them with electrical consulting services and designer and installation services. SCEF provides its customers with electrical consulting services relating to the design and relocation of electrical poles and wires, design and installation of new distribution and service line extensions, and design and installation of underground conduit installation. While all of SCEF's work begins as consultant work, some of its relationships transition into providing services that are governed by Edison's ADS Policy—this work is the design and installation for new utility lines and distribution and services lines that makes up the Relevant Product Market.

35. SCEF entered into and completed performance on the following contracts for applicant design and install work that is governed by Edison's ADS Policy:

| | **Completed Applicant Installation Projects** | **Contract Value** |
|---|---|---|
| 1 | Crimson Pipeline, LLC:1200 Spinnaker, Ventura:1200 Spinnaker- Applicant Installation | $ 11,000.00 |
| 2 | Execpro Services, Inc.:2621 Malibu Canyon Rd- Applicant Installation | $ 219,200.00 |
| 3 | Richard Holz, Inc. (waivers):25067 Ashley Ridge, Hidden Hills:25067 Ashley Ridge- Conduits & Structures/Applicant Install | $ 174,668.50 |
| 4 | Richard Holz, Inc. (waivers):25085 Ashley Ridge, Hidden Hills:25085 Ashley Ridge- Conduits & Structures/Applicant Install | $ 172,000.00 |
| 5 | Riehl Construction Consulting, LLC:916 Foothill Rd, Beverly Hills:916 Foothill- SCE Conduits & Structures | $ 155,581.42 |

36. SCEF entered into and is working on the following applicant installation contracts that are subject to Edison's ADS Policy with a collective total contract value of $267,925:[1]

[1] SCEF redacted project names and costumer names for pending projects to prevent Edison from using this sensitive information to cause further frustration to SCEF's performance. A non-redacted version of this First Amended Complaint is being maintained by SCEF and will be made available to the Court upon request or as part of a motion for a protective order.

| | Active Applicant Installation Projects | Contract Value |
|---|---|---|
| 1 | [REDACTED] Civil Construction & Applicant Installation | $ 56,000.00 |
| 2 | [REDACTED] - SCE Conduits and Structures | $ 158,175.00 |
| 3 | [REDACTED] Construction & Applicant Installation | $ 53,750.00 |

37. Collectively, each of the contracts identified in paragraphs 35 and 36 are referred to as SCEF Tariff Contracts.

***iii. Edison Interferes with SCEF's Ability to Provide Services in the Relevant Product Market.***

38. SCEF's success is continuously met with obstacles, additional costs, hardships, and burdens imposed on it by Edison's anticompetitive conduct. To mitigate the harm caused by Edison's unlawful ADS Policy, SCEF subcontracts all of its work in the Relevant Product Market to contractors that qualify under the ADS Policy. As such, for the SCEF Tariff Contracts, SCEF suffers losses at a minimum of 85 percent of the contract value due to outsourcing this work.

## V. FACTUAL ALLEGATIONS RELATING TO EDISON'S INTERFERENCE WITH SCEF'S CONSULTING CONTRACTS

39. SCEF has entered into and completed performance on the following contracts for consulting services only:[2]

| | Project Location | Client | Contract Value | Contract Completion Date |
|---|---|---|---|---|
| 1 | 915 Berkeley | Ali Danesh | $ 13,500.00 | Dec-21 |
| 2 | [REDACTED] | [REDACTED] | $ 52,000.00 | Aug-20 |
| 3 | [REDACTED] | [REDACTED] | $ 46,800.00 | Jul-22 |

[2] Plaintiffs redacted identifying information for current customers that have pending projects with SCEF.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 4 | 430 Trousdale - Temp Power | Arpeggio Place, LLC | - | Oct-20 |
| 5 | 1860 Carla Ridge, Beverly Hills | ARYA Group Inc. | $ 3,500.00 | Jun-20 |
| 6 | 1860 Carla Ridge, Beverly Hills | ARYA Group Inc. | $ 7,000.00 | Feb-21 |
| 7 | 5483 Moreno St, Montclair | Asplundh Construction LLC | $ 5,000.00 | Aug-21 |
| 8 | 5483 Moreno St, Montclair | Asplundh Construction LLC | $ 15,000.00 | Jun-22 |
| 9 | [REDACTED] | [REDACTED] | - | Oct-20 |
| 12 | [REDACTED] | [REDACTED] | $ 17,000.00 | Oct-21 |
| 13 | 1674 20th St, Santa Monica | Baranof Holdings | $ 23,000.00 | Nov-22 |
| 15 | 1363 Spinnaker Dr | Bellingham Marine Industries | $ 15,500.00 | Apr-22 |
| 16 | 400 3rd St, Manhattan Beach | Brian Horner | $ 10,000.00 | Sep-21 |
| 18 | 719 N Palm Dr | BTC Builders | $ 17,500.00 | May-22 |
| 19 | 1115 Calle Vista Dr (Gas and Comm) | Byron Allen | $ 10,000.00 | Sep-22 |
| 20 | 1115 Calle Vista Dr (Rule 15/16) | Byron Allen | $ 26,000.00 | May-22 |
| 21 | 3941 Latigo Canyon Rd | Caileen Uznis | $ 5,000.00 | Nov-20 |
| 22 | 1715 Loma Vista | Carter Bradley | $ 5,000.00 | May-20 |
| 23 | 1715 Loma Vista | Carter Bradley | $ 1,500.00 | Jun-20 |
| 24 | 730 24th Pl, Hermosa Beach | Chris Holbert | $ 8,500.00 | May-21 |
| 25 | 728 Vail | Chris Sarkissian | $ 9,500.00 | Apr-21 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 26 | [redacted] | [redacted] | $ 5,000.00 | Aug-21 |
| 27 | [redacted] | [redacted] | $ 6,500.00 | Jan-21 |
| 28 | [redacted] | [redacted] | $ 6,500.00 | Sep-21 |
| 29 | [redacted] | [redacted] | $ 15,500.00 | Sep-21 |
| 30 | [redacted] | [redacted] | $ 15,500.00 | Nov-22 |
| 32 | 1316 The Strand | Corinna Cotsen | $ 21,000.00 | May-20 |
| 33 | [redacted] | [redacted] | $ 20,000.00 | Jul-20 |
| 34 | [redacted] | [redacted] | $ 16,500.00 | Sep-20 |
| 36 | [redacted] | Cypress Equtiy Investments | $ 4,000.00 | Feb-21 |
| 37 | [redacted] | Cypress Equtiy Investments | $ 2,500.00 | Jan-21 |
| 38 | [redacted] | Cypress Equtiy Investments | $ 35,000.00 | Jul-21 |
| 39 | [redacted] | Cypress Equtiy Investments | $ 57,500.00 | Dec-21 |
| 41 | Walton Project - Briggs Rd | David Evans and Associates, Inc. | $ 15,000.00 | Oct-19 |
| 42 | West Creek Phase 1/2 | David Evans and Associates, Inc. | $ 10,000.00 | Jan-20 |
| 43 | 6847 Wildlife | David Hawryluk | $ 40,000.00 | Jan-22 |
| 44 | 455 N Rodeo | De La Garza Architects | $ 20,000.00 | Sep-21 |
| 45 | 411 Via Mesa Grande | Decom Development | $ 9,500.00 | Sep-21 |
| 46 | 930 Belmont | Decoma Industries | $ 7,750.00 | Nov-22 |

| | | | | |
|---|---|---|---|---|
| 47 | 205 S Ventura Rd (Anacapa View) | Design Build Associates | $ 15,000.00 | Jun-20 |
| 48 | 2604 Alvord Ln | Doug Swartz | - | Mar-20 |
| 49 | 17 7th St | Elite Design Builders | $ 2,500.00 | Jun-21 |
| 50 | 2621 Malibu Canyon Rd | Execpro Services, Inc. | $ 65,000.00 | Jul-20 |
| 51 | 2621 Malibu Canyon Rd | Execpro Services, Inc. | $ 12,500.00 | Jun-20 |
| 52 | 2022 Bataan Rd | Fame Civil Engineer | - | Mar-20 |
| 53 | 2112 Ruhland Ave | Fame Civil Engineer | - | Oct-20 |
| 54 | 2403 Ralston Lane | Fame Civil Engineer | $ 10,000.00 | Sep-22 |
| 56 | 5600 Rickenbacker, Bell | Food Forward | $ 5,000.00 | Aug-20 |
| 57 | 1033 Woodland | Fort Hill Construction | $ 21,000.00 | Sep-21 |
| 58 | 954 Franklin | Franklin Hill Partners, LLC | $ 43,000.00 | May-21 |
| 59 | 21950 PCH | Freeman Group | $ 19,500.00 | Sep-21 |
| 60 | 220 Adelaide | G3 Group | $ 5,000.00 | Feb-21 |
| 61 | 220 Adelaide | G3 Group | $ 21,000.00 | Dec-20 |
| 62 | 10811 Old Santa Susana Pass Rd | G3 Urban | $ 12,500.00 | Mar-22 |
| 63 | 1975 Carla Ridge Rd | Gavin Prolone | $ 20,000.00 | Nov-19 |
| 66 | 741 S. Lugo | GWC Real Estate Services | $ 19,500.00 | Sep-21 |
| 67 | 15140 Ceres Ave - Consulting | Hardy & Harper | $ 21,000.00 | Dec-20 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 68 | 15140 Ceres Ave - Temp power | Hardy & Harper | - | Nov-20 |
| 69 | 27501 John Montgomery Dr | Harridge Development Group | - | Mar-21 |
| 70 | 1016 N Hillcrest | Hilldrive LLC | $ 18,500.00 | Sep-21 |
| 71 | 430 Walker Dr | IDGROUP | $ 5,000.00 | Nov-21 |
| 72 | 5 Pine Tree Ln | Jack LoGrande Builders | $ 2,500.00 | Dec-20 |
| 73 | 52 Portuguese Bend Rd | Jack LoGrande Builders | - | Nov-20 |
| 74 | MVSC - Anchor Conversion | JLL | $ 9,000.00 | Jul-21 |
| 75 | MVSC - Signature Restaurant | JLL | $ 8,800.00 | Aug-21 |
| 76 | MVSC - 27th St Retail | JLL | $ 14,000.00 | Nov-22 |
| 77 | 1312 E Warner Ave | Joanna Energy Center, LLC | - | Nov-20 |
| 78 | 5359 E Valley Rd | John Jezzeni | $ 200,000.00 | - |
| 79 | 3029 Linda Ln | Julie Larson and Joe Newman | $ 5,000.00 | Nov-19 |
| 81 | 3769 Artesia Blvd | Labidus LP | $ 14,000.00 | Feb-22 |
| 83 | 300 N. Rodeo | Lochte Architectural Group | $ 15,000.00 | Jun-20 |
| 84 | 24314 Long Valley | Long Valley Living LLC | $ 214,000.00 | - |
| 86 | [redacted] | [redacted] | $ 50,000.00 | Dec-20 |
| 92 | 22258 & 22310 PCH | Malibu Residence | - | - |
| 93 | 22258 & 22310 PCH - Temp Power | Malibu Residence | - | Mar-20 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 94 | 517 Alta | Marco DeGeorge | $ 6,500.00 | Apr-20 |
| 95 | 6844 Wildlife | Marco DeGeorge | $ 17,000.00 | Oct-21 |
| 98 | 371 21st | Marmol-Radziner | - | Nov-20 |
| 99 | 4916 Whittier | Mehran Safi Nasser Hiekali United Medical Imaging Healthcare (UMIH) | $ 5,000.00 | Jan-20 |
| 100 | 515 N. Sierra, Beverly Hills | Mel Elias | $ 5,000.00 | Dec-20 |
| 101 | [redacted] | Mike Davis Custom Home Building, Inc | - | - |
| 102 | [redacted] | Mike Davis Custom Home Building, Inc | - | Mar-20 |
| 103 | [redacted] | Mike Davis Custom Home Building, Inc | - | - |
| 104 | [redacted] | Mike Davis Custom Home Building, Inc | - | Mar-20 |
| 105 | 2651 Main St | Nick Smith | $ 12,500.00 | Aug-22 |
| 106 | 1302 E Warner Ave | Orange County Energy Storage 2, LLC | - | Nov-20 |
| 107 | 14128 Rosecrans Ave | Oxman's Surplus | $ 5,000.00 | Jun-21 |
| 108 | 14128 Rosecrans Ave | Oxman's Surplus | $ 9,350.00 | Sep-21 |
| 109 | 2304 The Strand, Manhattan Beach | Pablo Veglia | $ 15,000.00 | Oct-21 |
| 110 | 433 Via La Selva | Patricia Ciuffreda | $ 5,000.00 | Apr-20 |
| 111 | 10857 Drury Ln | Plan C Design | $ 15,000.00 | Jan-22 |
| 112 | 4175 Guardian St | Rci Builders | $ 17,500.00 | Sep-21 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 113 | [redacted] | [redacted] | - | Oct-20 |
| 114 | [redacted] | [redacted] | $ 27,000.00 | Jun-21 |
| 115 | [redacted] | [redacted] | $ 24,500.00 | Jun-21 |
| 116 | [redacted] | [redacted] | - | - |
| 118 | [redacted] | [redacted] | $ 15,000.00 | Apr-22 |
| 120 | [redacted] | [redacted] | - | Oct-20 |
| 121 | [redacted] | [redacted] | - | Nov-20 |
| 122 | [redacted] | [redacted] | $ 6,500.00 | Jul-21 |
| 123 | [redacted] | [redacted] | $ 6,500.00 | Mar-22 |
| 124 | [redacted] | [redacted] | $ 6,500.00 | Mar-22 |
| 125 | [redacted] | [redacted] | $ 22,000.00 | Nov-20 |
| 126 | [redacted] | [redacted] | $ 7,500.00 | Aug-20 |
| 129 | 1627 East Valley | Rios Clementi Hale Studios (RCH Studios) | $ 24,000.00 | Aug-21 |
| 130 | [redacted] | [redacted] | - | Nov-20 |
| 131 | [redacted] | [redacted] | $ 3,000.00 | Mar-22 |
| 132 | [redacted] | [redacted] | $ 16,000.00 | Oct-22 |
| 135 | [redacted] | [redacted] | $ 12,000.00 | Feb-22 |
| 136 | 28116 Pacific Coast Highway | Rosalita, LLC Lot 21, LLC | $ 4,000.00 | Oct-20 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| 137 | 28116 Pacific Coast Highway | Rosalita, LLC Lot 21, LLC | $ 7,000.00 | Feb-21 |
| 138 | 10686 Cherry | Ryder Truck | $ 5,000.00 | Oct-21 |
| 139 | 1312 The Strand | Sarah Stoker | $ 2,850.00 | - |
| 141 | 2812 Timothy | See QB | $ 5,000.00 | Jun-20 |
| 142 | 420 Trousdale - Temp Power | Shawmut Design and Construction | - | Sep-20 |
| 143 | 650 18th St | Shawn Nelson Builders | $ 14,500.00 | Apr-20 |
| 144 | 315 Palisades | Sherman Ma | $ 45,000.00 | May-21 |
| 145 | 401 Montana | Sherman Ma | $ 12,000.00 | Sep-20 |
| 146 | 25306 Malibu Rd | Shivhon Construction, Inc. | $ 25,000.00 | Dec-21 |
| 147 | 1187 Hillcrest Rd | Sky Mansion West II LLC | $ 31,000.00 | May-21 |
| 149 | 984 N. Alpine Dr | Stonehurst Group, Inc | $ 10,000.00 | May-22 |
| 150 | 940 Franklin | Tatum Construction | $ 12,500.00 | Oct-21 |
| 151 | 1413 Palisades Beach | Ted Romano | $ 8,000.00 | - |
| 152 | 28124 PCH | The 28124 PCH Family Trust… | $ 17,500.00 | Nov-21 |
| 153 | 519 Via Monte Doro | West Construction and Design | $ 7,750.00 | Feb-22 |
| 154 | 1014 N. Roxbury Dr | Xanadu 3 Trust | $ 45,000.00 | Oct-21 |
| 155 | 1210 & 1200 Laurel Way | YD 120 Laurel Way | $ 48,840.00 | Mar-22 |
| 156 | 1420 The Strand | Allegheny Capital | $ 20,000.00 | Jun-22 |

| 158 | 28901 Selfridge Dr | Juliet De Baubigny | $ 4,000.00 | Apr-22 |
|---|---|---|---|---|
| 159 | [redacted] | [redacted] | $ 8,500.00 | Sep-22 |
| 178 | [redacted] | [redacted] | $ 7,500.00 | Oct-22 |
| 185 | 15140 Ceres Ave | Lord Constructors Inc | $ 7,500.00 | Nov-22 |
| 204 | [redacted] | CEI Acquisitions LLC | $ 3,000.00 | Nov-22 |
| 207 | 27756 Ave Mentry | Forrest Machining LLC | $3,000 | Nov-22 |

40. SCEF has entered into and is working on the following contracts for consulting services with a collective total contract value of $2,282,300:[3]

| | **Project Location** | **Client** | **Contract Value** |
|---|---|---|---|
| 1. | [redacted] | [redacted] | $ 17,000.00 |
| 2. | [redacted] | [redacted] | $ 23,000.00 |
| 3. | [redacted] | [redacted] | $ 45,000.00 |
| 4. | [redacted] | [redacted] | $ 55,000.00 |
| 5. | [redacted] | [redacted] | $ 20,000.00 |
| 6. | [redacted] | [redacted] | $ 65,000.00 |
| 7. | [redacted] | [redacted] | $ 45,000.00 |
| 8. | [redacted] | [redacted] | $ 7,000.00 |
| 9. | [redacted] | [redacted] | $ 7,000.00 |
| 10. | [redacted] | [redacted] | $ 17,000.00 |
| 11. | [redacted] | [redacted] | $ 16,500.00 |
| 12. | [redacted] | [redacted] | $ 15,500.00 |

[3] *See supra* note 1.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| 13. | [redacted] | [redacted] | $ 22,000.00 |
| 14. | [redacted] | [redacted] | $ 22,000.00 |
| 15. | [redacted] | [redacted] | $ 24,000.00 |
| 16. | [redacted] | [redacted] | $ 12,000.00 |
| 17. | [redacted] | [redacted] | $ 68,000.00 |
| 18. | [redacted] | [redacted] | $ 50,000.00 |
| 19. | [redacted] | [redacted] | $ 9,800.00 |
| 20. | [redacted] | [redacted] | $ 12,000.00 |
| 21. | [redacted] | [redacted] | $ 150,000.00 |
| 22. | [redacted] | [redacted] | $ 60,000.00 |
| 23. | [redacted] | [redacted] | $ 68,000.00 |
| 24. | [redacted] | [redacted] | $ 62,000.00 |
| 25. | [redacted] | [redacted] | $ 51,000.00 |
| 26. | [redacted] | [redacted] | $ 14,500.00 |
| 27. | [redacted] | [redacted] | $ 5,500.00 |
| 28. | [redacted] | [redacted] | $ 45,000.00 |
| 29. | [redacted] | [redacted] | $ 19,500.00 |
| 30. | [redacted] | [redacted] | $ 34,000.00 |
| 31. | [redacted] | [redacted] | $ 35,000.00 |
| 32. | [redacted] | [redacted] | $ 16,000.00 |
| 33. | [redacted] | [redacted] | $ 16,000.00 |
| 34. | [redacted] | [redacted] | $ 64,000.00 |
| 35. | [redacted] | [redacted] | $ 20,000.00 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| 36. | [redacted] | [redacted] | $ 22,000.00 |
| 37. | [redacted] | [redacted] LLC | $ 17,000.00 |
| 38. | [redacted] | [redacted] | $ 12,500.00 |
| 39. | [redacted] | [redacted] | $ 78,000.00 |
| 40. | [redacted] | [redacted] | $ 21,000.00 |
| 41. | [redacted] | [redacted] | $ 43,000.00 |
| 42. | [redacted] | [redacted] | $ 65,000.00 |
| 43. | [redacted] | [redacted] | $ 8,500.00 |
| 44. | [redacted] | [redacted] | $ 16,500.00 |
| 45. | [redacted] | [redacted] | $ 16,500.00 |
| 46. | [redacted] | [redacted] | $ 16,500.00 |
| 47. | [redacted] | [redacted] | $ 16,500.00 |
| 48. | [redacted] | [redacted] | $ 15,000.00 |
| 49. | [redacted] | [redacted] | $ 12,000.00 |
| 50. | [redacted] | [redacted] | $ 5,000.00 |
| 51. | [redacted] | [redacted] | $ 11,500.00 |
| 52. | [redacted] | [redacted] | $ 16,500.00 |
| 53. | [redacted] | [redacted] | $ 16,500.00 |
| 54. | [redacted] | [redacted] | $ 12,500.00 |
| 55. | [redacted] | [redacted] | $ 16,500.00 |
| 56. | [redacted] | [redacted] | $ 16,500.00 |
| 57. | [redacted] | [redacted] | $ 27,500.00 |
| 58. | [redacted] | [redacted] | $ 8,500.00 |
| 59. | [redacted] | [redacted] | $ 16,500.00 |

| | | | |
|---|---|---|---|
| 60. | [redacted] | [redacted] | $ 13,000.00 |
| 61. | [redacted] | [redacted] | $ 50,000.00 |
| 62. | [redacted] | | $ 17,000.00 |
| 63. | [redacted] | [redacted] | $ 20,000.00 |
| 64. | [redacted] | [redacted] | $ 23,500.00 |
| 65. | [redacted] | [redacted] | $ 13,000.00 |
| 66. | [redacted] | [redacted] | $ 24,000.00 |
| 67. | [redacted] | [redacted] | $ 50,000.00 |
| 68. | [redacted] | [redacted] | $ 23,000.00 |
| 69. | [redacted] | [redacted] | $ 7,500.00 |
| 70. | [redacted] | [redacted] | $ 14,500.00 |
| 71. | [redacted] | [redacted] | $ 5,000.00 |
| 72. | [redacted] | | $ 39,000.00 |
| 73. | [redacted] | [redacted] | $ 7,500.00 |
| 74. | [redacted] | [redacted] | $ 10,000.00 |
| 75. | [redacted] | [redacted] | $ 10,000.00 |
| 76. | [redacted] | [redacted] | $ 20,000.00 |
| 77. | [redacted] | [redacted] | $ 9,000.00 |
| 78. | [redacted] | [redacted] | $ 15,000.00 |
| 79. | [redacted] | [redacted] | $ 5,500.00 |
| 80. | [redacted] | [redacted] | $ 23,000.00 |
| 81. | [redacted] | [redacted] | $ 19,500 |
| 82. | [redacted] | [redacted] | $ 39,000 |
| 83. | [redacted] | [redacted] | $ 36,500.00 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| 84. | [redacted] | [redacted] | $ 25,000.00 |
| 85. | [redacted] | [redacted] | $ 24,000.00 |
| 86. | [redacted] | [redacted] | $ 18,000.00 |

41. Collectively, each of the contracts identified in paragraphs 39 and 40 are referred to as SCEF Consulting Contracts.

42. Edison interferes with each and every one of SCEF's Consulting Contracts through the following acts, including but not limited to:

a. Instructing Edison employees in the South Bay District that they could not communicate with Plaintiffs nor Plaintiffs employees;

b. Informing owners and contractors that it will not acknowledge SCEF's work;

c. Informing owners and contractors that it will not recognize the validity of any contracts with SCEF;

d. Instructing owners and contractors not to use SCEF, even though SCEF was under contract with these owners and contractors to provide them meaningful consultation services;

e. Intentionally damaging SCEF's reputation by discussing Edison's past dealings and issues with SCEF during site inspections with SCEF's customers; and

f. Interfering with the progression of work on projects that SCEF is working on.

## V. FACTUAL ALLEGATIONS RELATING TO ALL CAUSES OF ACTION

43. On February 18, 2018, SCEF sent Edison a cease and desist letter, identifying Edison's conduct as restrictive, in violation of California law and subjecting Edison to claim under Public Utility Code § 2106.

44. On March 29, 2018, Edison confirmed in writing its position that it "is not required to conduct business with" SCEF. Notably, Edison purposely confuses the matter—SCEF is not asking to and has no desire to conduct business with Edison, instead, SCEF demands that Edison quit interfering with SCEF's contracts with consumers.

45. On April 6, 2018, SCEF wrote to Edison that,

> SCEF is working its active projects to mitigate exposure for both parties. In the spirit of truly resolving this situation amicably, SCEF is restricting its dealings with SCE by funneling all communications and contact with SCE through persons that are not subject to the imposed restrictions. Until the reasonable restrictions are deemed acceptable, SCEF will perform under this arrangement.

46. On August 12, 2020, Edison informed SCEF that it was aware of SCEF's projects being carried out by SCEF's third-parties and that Edison would no longer permit SCEF to utilize third-parties in furtherance of its projects within the SCE Territory. In a meeting with Edison, Edison personnel informed SCEF that:

a. Edison will not accept any new submittals for new service design and construction from SCEF, including local planning submittals, applicant design or applicant install;

b. Edison will not accept work that was submitted on behalf of SCEF through a third party company (a subcontractor) for applicant design and installation work;

c. Edison will not honor future work requests submitted by SCEF under third party authorization letters;

d. Edison unilaterally contacted SCEF's subcontractors and notified them that Edison would not accept new work that originated with SCEF; and

e. Farr, Kanowsky, and Morgan were not permitted on Edison property or allowed to communicate with Edison employees per their termination conditions.

47. Between August 2020 and April 2022, SCEF continued to mitigate the impact of Edison's restrictive and anticompetitive conduct by assigning both SCEF Tariff Contracts and SCEF Consultant Contracts to subcontractors in order to continue processing work through the Edison system. As a result, SCEF would receive only a small fraction of the contract value, resulting in significant losses to the business.

48. To further mitigate the impacts of Edison's wrongful conduct, SCEF was forced to hire at least four full-time employees for the sole purpose of submitting claims and paperwork to Edison in an effort to circumvent Edison's interference with the SCEF Consulting Contracts and SCEF Tariff Contracts and to comply with Edison's ADS Policy.

49. From 2017 through April 2022, SCEF's contract value for SCEF Tariff Contracts exceeds $1,000,000, and its contract value for SCEF Consultant Contracts exceeds $4,500,000.00. For all of its contracts, SCEF was forced to incur losses in its efforts to mitigate the harm Edison was causing through its wrongful conduct.

50. Plaintiffs bring this lawsuit to enjoin Edison from enforcing its unreasonable prequalification and ongoing qualification standards under its ADS Policy against Plaintiffs and declaring Section 2.7(A) and Edison's practice of extending its disqualification impact to corporate entities to be unreasonable and unlawful. Plaintiffs also seek monetary damages for the harm Edison's unlawful and restrictive practice caused them. Plaintiffs also seeks recovery for harm caused due to Edison's interference with the SCEF Consulting Contracts.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of Section 2 of the Sherman Act—15 U.S.C. § 2)**

**Against Edison**

51. SCEF hereby incorporates by reference each and every allegation previously alleged in this First Amended Complaint.

52. This cause of action is brought pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and alleges that Edison has possession of monopoly power in the Relevant Geographic Market, thus owning and controlling a dominant share of the Relevant Product Market amounting to *at least* 75%. Through deceptive and anticompetitive conduct, Edison has willfully maintained such monopoly power by erecting significant barriers of entry into the Relevant Product Market and has consequently caused antitrust injury by significantly decreasing or eliminating completely competitors' abilities and/or capacity to be part of the Relevant Product Market.

53. Edison's monopoly position has been acquired and maintained through exclusionary conduct as opposed to a superior product or business acumen.

54. The relevant geographic market in this case, as defined above, is within the SCE Territory and includes the areas within Ventura County, San Bernardino County, Mono County, Inyo County, Tulare County, Kern County, Los Angeles County, Orange County, Riverside

County, Tuolumne County, Fresno, and Santa Barbara that Edison provides electricity.

55. The relevant product market, as also defined above, is the market for the design and installation of new distribution line and service extensions for electricity to connect new consumers to existing grids within the Relevant Geographic Market, a market in which Edison and third-party designers and installers compete to provide services to consumers.

56. Edison's unlawful conduct not only harms competitors but also harms the competitive process and thereby the consumers. As set forth above, SCEF contracted with consumers to provide services in the Relevant Product Market—the SCEF Tariff Contracts. Due to Edison's unreasonable prequalification requirements under the ADS Policy to not work with former Edison employees, SCEF was required to mitigate harm caused to it by Edison's conduct by hiring third-party contractors to assist it in its work.

57. If not enjoined, Edison's monopolization will continue, with the result that SCEF will be frozen out of the Relevant Product Market with the option to either change its servicing region to one where Edison is not present or not participate in the defined market, and consumers will continue to suffer from limited options of service and restricted prices.

58. By reason of, and as a direct and proximate result of the violations alleged herein, SCEF has been, and will continue to be, irreparably injured in its business by Edison's continuing violations.

59. Plaintiffs are also entitled to recover damages and interest under 15 U.S.C. section 15, and California Public Utilities Code, section 2106, including treble and exemplary damages as permitted by law and damages allowed due to Edison's willful misconduct.

**SECOND CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Relations)**

**Against all Defendants**

60. SCEF hereby incorporates by reference each and every allegation previously alleged in this First Amended Complaint.

61. At all times relevant hereto, SCEF had a beneficial relationship with third-parties in the SCE Territory, including without limitation landowners and contractors associated with the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

62008906.1

SCEF Consultant Contracts and the SCEF Tariff Contracts. SCEF is engaged by its customers to provide meaningful electrical consulting, design, relocation and installation services.

62. SCEF's prospective contracts include, among others, contracts with contractor Mike Davis Home Builders ("MD Home Builders") and owner Cypress Equity Investments, Inc. ("CEI"). SCEF and MD Home Builders were in an economic relationship that would have resulted in an economic benefit to SCEF. SCEF was to provide consulting and applicant design services for MD Home Builders projects.

63. On or about February 2018, Edison contacted MD Home Builders to let them know that Edison would not honor SCEF work and would not communicate with anyone that works for SCEF. At that time, SCEF and MD Home Builders had a contract for a project located at 424 1st St., Manhattan Beach, CA, within the SCE Territory (the "MD Home Builders Project"). MD Home Builders was told that it would have to communicate with Edison directly to process Rule 15 and 16 designs for the MD Home Builders Project. As a result, SCEF could not finish the MD Home Builders Project as contemplated by its contract, and MD Home Builders had to communicate with Edison directly.

64. Prior to the MD Home Builders Project, SCEF had completed at least four separate contracts for MD Home Builders and was expected to receive additional contracts for consulting and design work. After Edison's interference on the MD Home Builders Project, SCEF did not receive any additional work from MD Home Builders.

65. SCEF and CEI were in an economic relationship that would have resulted in a continuing economic benefit to SCEF. In early 2022, SCEF received six consulting and design contracts from CEI for consulting and applicant design services for multiple multifamily high-rise buildings in Santa Monica, CA, including a consulting services agreement dated May 18, 2022 for a project located at 386 Beech Ave, Suite 2, Torrance, CA 90501 ("CEI Projects").

66. The CEI Projects are difficult to plan for utility infrastructure and require a qualified company like SCEF that has the experience and knowledge to design the project properly. CEI told SCEF they had several more projects developing and requested proposals from SCEF. After CEI was made aware that SCEF had to use subcontractors to complete its work with CEI, CEI did not

award SCEF the three projects that SCEF submitted proposals for. CEI has also not requested additional proposals from SCEF to complete the consultant services or applicant design of any additional projects since the CEI Projects were awarded earlier in 2022. CEI stated that they were going to review all active contracts with SCEF and possibly cancel the CEI Project because "they hired [SCEF] to work directly with [Edison]."

67. At all times relevant hereto, Edison was aware of SCEF's business relationships with MD Home Builders and CEI, including SCEF's business expectations with prospective customers in the SCE Territory.

68. Edison's unlawful conduct and anticompetitive actions, including, without limitation, implementing unreasonable prequalification requirements under Edison's ADS Policy, informing owners and contractors that it would not acknowledge SCEF's work or recognize the validity of their Contracts with SCEF, and instructing owners and contractors not to use SCEF each individually and collectively was a substantial factor in interfering with SCEF's prospective economic relationships.

69. Further, Edison revised its prequalification requirements for the application designer and installer program under Electrical Tariff Rules 15 and 16 to intentionally remove Plaintiffs from their approved status on the qualified contractor list.

70. By engaging in the wrongful conduct as pled herein, Edison intended to disrupt the relationships and/or knew that the disruption of the relationship was certain or substantially certain to occur. As a direct and proximate result of Edison's wrongful conduct, the relationships were disrupted and SCEF suffered, and will continue to suffer, significant damages to its business, goodwill and reputation in an amount according to proof at trial.

71. Defendants acted knowingly with the purpose of causing damage to SCEF's business and its goodwill and reputation so as to justify an award of exemplary and punitive damages, including damages under California Public Utilities Code, section 2106.

**<u>THIRD CAUSE OF ACTION</u>**

**(Intentional Interference with Contractual Relationship)**

**Against all Defendants**

72. SCEF hereby incorporates by reference each and every allegation previously alleged in this First Amended Complaint.

73. At all times relevant hereto, SCEF entered into contractual relationships for the performance of electrical consulting, electrical construction and design as identified as the SCEF Consultant Contracts and SCEF Tariff Contracts.

74. As a result of these contractual relationships, SCEF received, and reasonably expected to continue receiving, work and income.

75. Edison was aware of SCEF's contractual relationships and its business expectations.

76. Edison's unlawful conduct and anticompetitive actions, including, without limitation, enforcing unreasonable prequalification's under Edison's ADS Policy, informing owners and contractors that it would not acknowledge SCEF's work or recognize the validity of their contracts with SCEF, and instructing owners and contractors not to use SCEF, substantially interfered with SCEF's contractual relationships, and was a substantial factor in preventing SCEF's ability to perform or rendering SCEF's performance more expensive or difficult.

77. Edison has also intentionally slowed projects on which SCEF is working for the purpose of frustrating SCEF's ability to perform under the SCEF Consultant Contracts and SCEF Tariff Contracts. For example, Edison personnel Carmen McNeal intentionally interfered with and delayed the approval of SCEF's application submitted by a subcontractor for design and installation services on a project located at 916 Foothill Ave, Beverly Hills, CA. As a result, SCEF incurred unnecessary delays to its project, rendering performance more difficult and expensive.

78. As a result, SCEF has either lost the ability to perform its contractual obligations, or performance of those contractual obligations have become more expensive or difficult as a result of Edison's misconduct.

79. As a direct and proximate result of Edison's wrongful conduct, SCEF has suffered, and will continue to suffer, significant damages to its business, goodwill and reputation in an amount according to proof at trial.

80. Defendants acted knowingly with the purpose of causing damage to SCEF's business and its goodwill and reputation so as to justify an award of exemplary and punitive

damages, including damages under California Public Utilities Code, section 2106.

**FOURTH CAUSE OF ACTION**

**(Violation of the Unfair Competition Law – Cal. Bus. & Prof. Code § 17200 et seq.)**

**Against all Defendants**

81. SCEF hereby incorporates by reference each and every allegation previously alleged in this First Amended Complaint.

82. By virtue of the conduct described herein, Edison engaged in unlawful, unfair, dishonest, deceptive, and destructive business acts and practices by which fair and honest competition is destroyed and/or prevented in violation of California Business and Professions Code § 17200, et seq.

83. As a proximate result of Edison's business acts and practices, SCEF has and will continue to lose money, and consumers of electricity in the Relevant Market have, and will continue to be harmed, and Edison has enjoyed and will continue to enjoy unlawful profits in a sum not yet fully ascertained.

84. SCEF is entitled to preliminary and permanent injunctive relief sufficient to restrain Edison from continuing or repeating such acts in the future.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

**ON THE FIRST CAUSE OF ACTION**

1. Monetary damages sustained as a result of injury due to Edison's violations of the Sherman Act (15 U.S.C. § 2) in amounts to be ascertained at trial;

2. Damages and interest under 15 U.S.C. section 15, and California Public Utilities Code, section 2106, including treble and exemplary damages as permitted by law and damages allowed due to Edison's willful misconduct;

3. Other general and consequential damages, according to proof; and

4. Interest according to law.

**ON THE SECOND CAUSE OF ACTION**

5. For damages according to proof at time of trial;

6. Punitive and exemplary damages, according to proof; and

7. Interest according to law.

**ON THE THIRD CAUSE OF ACTION**

8. For damages according to proof at time of trial;

9. Punitive and exemplary damages, according to proof; and

10. Interest according to law.

**ON THE FOURTH CAUSE OF ACTION**

11. Preliminary and permanent injunction enjoining Edison from continuing its unfair and unlawful business practices, including, without limitation, prohibiting Edison from implementing unreasonable prequalification requirements against SCEF and related entities that precludes them from participating the in the Relevant Product Market.

**ON ALL CAUSES OF ACTION**

12. Recovery of costs of suit, including reasonable attorneys' fees, as permitted by law, in an amount allowed by the Court; and

13. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury in this action of all issues so triable.

DATED: January 24, 2023

**ROBINS KAPLAN LLP**

By: /s/ *Jason R. Fair*
Jason R. Fair
Nargess N. Hadjian

**ATTORNEYS FOR PLAINTIFFS SOUTHERN CALIFORNIA ELECTRICAL FIRM, JASON FARR, DAVID KANOWSKY, AND ROB MORGAN**