BRAD D. BRIAN (SBN 79001)
brad.brian@mto.com
ERIN J. COX (SBN 267954)
erin.cox@mto.com
MIRANDA E. REHAUT (SBN 335748)
miranda.rehaut@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

KYLE W. MACH (SBN 282090)
kyle.mach@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

LAUREN E. ROSS (*pro hac vice*)
lauren.ross@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite
500 E
Washington, DC 20001
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ELECTRICAL FIRM, a California corporation; JASON FARR, an individual; DAVID KANOWSKY, an individual; and ROB MORGAN, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 5:22-cv-00968-SPG-SHK<br><br>**DEFENDANT SOUTHERN CALIFORNIA EDISON COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Sherilyn Peace Garnett<br>Date:     March 22, 2023<br>Time:     1:30 p.m.<br>Crtrm.:    5C |

TO PLAINTIFFS SOUTHERN CALIFORNIA ELECTRICAL FIRM, JASON FARR, DAVID KANOWSKY, AND ROB MORGAN, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 22, 2023, at 1:30 P.M., or as soon thereafter as the matter may be heard, in Courtroom 5C of this Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Southern California Edison Company ("Defendant" or "Edison") will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' First Amended Complaint on the grounds that it fails to state any claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to Central District Local Civil Rule 7-3, which took place via videoconference on January 31, 2023, and during which counsel thoroughly discussed the timing and substance of the Motion and its potential resolution. This Motion is based on the files, records, and proceedings in this action; this Notice; the following Memorandum of Points and Authorities; the reply memorandum Defendant intends to file in support of this Motion; the arguments of counsel; and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.


DATED:  February 7, 2023              MUNGER, TOLLES & OLSON LLP



                                      By:    _/s/ Kyle W. Mach_____
                                             KYLE W. MACH
                                             BRAD D. BRIAN
                                             ERIN J. COX
                                             LAUREN E. ROSS
                                             MIRANDA E. REHAUT
                                      Attorneys for Defendant SOUTHERN
                                      CALIFORNIA EDISON COMPANY

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................. 1

II.  FACTUAL ALLEGATIONS ............................................... 2

    A.  SCEF Tariff Contracts ............................................... 3

    B.  SCEF Consulting Contracts ....................................... 5

III.  ARGUMENT ...................................................................... 5

    A.  Plaintiffs' Sherman Act Claim Should Be Dismissed. ......... 5

        1.  Plaintiffs Have Failed to Adequately Plead a Relevant Product Market. ..................................................... 6

        2.  Plaintiffs Have Failed to Plead Edison Has Market Power in the Relevant Market. ...................................... 8

        3.  The Sherman Act Does Not Obligate Edison to Work with Plaintiffs. ............................................... 11

        4.  Plaintiffs Have Not Alleged Antitrust Injury. ............ 12

    B.  Plaintiffs' State Law Claims Should Be Dismissed. ......... 13

        1.  Plaintiffs' Claim for Intentional Interference with Prospective Economic Relations Fails. ..................... 13

            (a)  The First Amendment Bars Plaintiffs' Claim Based on Edison's Communications with SCEF's Customers. ................................................ 14

            (b)  Plaintiffs' Claim Arising from Their Relationship with MD Home Builders Is Time-Barred. ................. 15

            (c)  Plaintiffs Have Failed to Allege that Edison Intended to Interfere with Their Relationship with CEI. ............................................................ 15

            (d)  Plaintiffs Have Not Established that Edison's Alleged Interference Kept Them from Winning Further CEI Contracts. ................................... 16

            (e)  Plaintiffs Have Not Adequately Pled that Edison's Conduct Was Independently Wrongful. ............... 16

            (f)  Plaintiffs' Vague Allegations About Other Unspecified Relationships Cannot Form the Basis for an Intentional Interference Claim. ................. 17

2.   Plaintiffs' Claim for Intentional Interference with Contract Fails....................................................................................18

(a)   Plaintiffs Have Not Plausibly Pled that Edison Knew About SCEF's Contracts..........................................18

(b)   Plaintiffs Have Not Shown that Edison Intended to Interfere with SCEF's Contracts After Mid-2018...........19

(c)   Plaintiffs Are Time-Barred from Bringing a Claim Based on Interference with Pre-2018 Contracts..............19

3.   Plaintiffs Have Not Stated a Claim for Unfair Competition. .......................................................................20

(a)   Unlawful Prong – SCEF Tariff Contracts and SCEF Consulting Contracts .....................................................20

(b)   Unfair Prong – SCEF Tariff Contracts...........................21

(c)   Unfair Prong – SCEF Consulting Contracts ..................21

IV.   CONCLUSION .............................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 19

*Baez v. Pension Consulting All., Inc.*,
   No. 17-01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) .............................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 9, 19

*Cavalier Tel., LLC. v. Verizon Va., Inc.*,
   330 F.3d 176 (4th Cir. 2003) ................................................................ 12

*Condos v. Condos*,
   No. 04-7365, 2007 WL 9698295 (C.D. Cal. Oct. 16, 2007) ................................ 17

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ................................................................ 18

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ................................................................. 6

*Intel Corp. v. Fortress Inv. Grp. LLC*,
   511 F. Supp. 3d 1006 (N.D. Cal. 2021) ....................................................... 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................. 20

*L&M Tire Co., Inc. v. Goodyear Tire & Rubber Co.*,
   No. 12-02720, 2013 WL 12157581 (S.D. Cal. Jan. 11, 2013) ............................ 22

*Lease Outlet, Inc. v. U.S. Bank*,
   No. 09-00108, 2011 WL 13175978 (C.D. Cal. Jan. 19, 2011) ........................... 22

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ................................................................ 13

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   726 F.2d 1381 (9th Cir. 1984) ................................................................ 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*,
   No. 08-00080, 2008 WL 2437739 (D. Haw. June 17, 2008) .................................. 9

*Nazemi v. Specialized Loan Servicing, LLC*,
   No. 22-05006, 2022 WL 17220707 (C.D. Cal. Oct. 31, 2022) ........................... 21

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   No. 21-00540, 2022 WL 2791201 (E.D. Cal. July 15, 2022) ............................. 13

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................ 6, 8

*Olin Corp. v. FTC*,
   986 F.2d 1295 (9th Cir. 1993) .............................................................................. 6

*Pac. Bell Tel. Co. v. LinkLine Commc'ns*,
   555 U.S. 438 (2009) ............................................................................................ 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .............................................................................. 15

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................. 7, 8

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008) .............................................................................. 10

*Rock v. Nat'l Collegiate Athletic Ass'n*,
   928 F. Supp. 2d 1010 (S.D. Ind. 2013) ............................................................... 8

*Shields v. Fed'n Internationale de Natation*,
   No. 18-07393, 2023 WL 121985 (N.D. Cal. Jan. 6, 2023) .................................. 10

*So. Cal. Electrical Firm v. So. Cal. Edison Co.*,
   No. 22-00968 (C.D. Cal. Jan. 10, 2023), ECF No. 31 ........................ 2, 15, 21, 22

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ................................................................. 18

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .............................................................................. 12

*Standard Furniture Mfg. Co., Inc. v. LF Prod. Pte. Ltd.*,
   No. 16-02097, 2017 WL 3082221 (C.D. Cal. June 13, 2017) ............................. 17

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ............................................................................ 10

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) ............................................................................ 6

*Top Rank, Inc. v. Haymon*,
   No. 15-4961, 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ................................ 11

*Trendmood, Inc. v. Rabinowitz*,
   No. 20-10877, 2021 WL 5277441 (C.D. Cal. Aug. 31, 2021) ............................ 13

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
   766 F.3d 1002 (9th Cir. 2014) ............................................................................ 17

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*,
   540 U.S. 398 (2004) ........................................................................ 6, 11, 12, 13

*Westlake Servs., LLC v. Credit Acceptance Corp.*,
   No. 15-07490, 2015 WL 9948723 (C.D. Cal. Dec. 7, 2015) ............................ 8, 9

**STATE CASES**

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995) ...................................................................................... 17

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ............................................................................ 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ...................................................................................... 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .................................................................................... 16

*Paradise Hills Assocs. v. Procel*,
   235 Cal. App. 3d 1528 (1991), modified (Dec. 11, 1991) ................................ 14

*Scripps Clinic v. Superior Ct.*,
   108 Cal. App. 4th 917 (2003) ............................................................................ 22

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ........................................................................ 16, 18

*Youst v. Longo*,
  43 Cal. 3d 64 (1987) ................................................................. 16

**REGULATORY CASES**

*In re Competitive Bidding Tariff Language*,
  1985 WL 1204993 (Cal. PUC. Aug. 21, 1985) ..................................... 12

**FEDERAL STATUTES**

Sherman Act, 15 U.S.C. § 2 ................................................. 1, passim

Telecommunications Act of 1996 ........................................... 11, 12

**STATE STATUTES**

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......... 2, 17, 20, 21

**FEDERAL RULES**

Rule 9(b) ................................................................ 20

Rule 12(b)(6) ............................................................. 6

**STATE RULES**

Cal. Civ. Proc. § 339 .................................................... 20

**OTHER AUTHORITIES**

Electric Tariff Rule 15 ........................................... 4, 7, 11

Electric Tariff Rule 16 ........................................... 4, 7

Southern California Edison, *SCE Tariff Books*,
  https://www.sce.com/regulatory/tariff-books (last visited February 6,
  2023) ..................................................................... 4

# I.    <u>INTRODUCTION</u>

Edison is an electrical utility company and the former employer of Plaintiffs Jason Farr, David Kanowsky, and Rob Morgan (collectively, "Plaintiffs"). Plaintiffs' initial complaint alleged that Edison was required by law to enable Plaintiffs to serve as Applicant Designers and Installers of service and distribution line extensions and that Edison was liable for interfering with Plaintiffs' existing and prospective contracts to provide these services to Edison's customers through the company Plaintiffs formed soon after their termination from Edison, Southern California Electrical Firm ("SCEF"). This Court dismissed that complaint. Dkt. No. 31. Plaintiffs' First Amended Complaint ("FAC") renews those allegations and also alleges that Edison is separately liable for interfering with certain electrical consulting contracts that are wholly unrelated to Applicant Design or Installation. Once again, Plaintiffs' claims are baseless and unsustainable.

Companies and individuals are free to choose *not* to transact or interact with others for a wide variety of reasons, including, for example, the fact that they find those individuals to be untrustworthy, unscrupulous, or potentially dangerous to their own employees. The Sherman Act does not alter that baseline presumption where, as here, a competitor demands that Edison deal with or enable them. California law similarly does not forbid Edison from refusing to work with Plaintiffs and truthfully informing third parties of that decision. Just because Plaintiffs have falsely held themselves out to potential customers as a company with a working relationship with Edison does not mean that Edison's refusal to play along has interfered with SCEF's contracts with those customers. Plaintiffs' amended complaint must be dismissed.

*First*, Plaintiffs' claim under the Sherman Act, 15 U.S.C. § 2, which alleges that Edison has engaged in anticompetitive conduct to maintain a monopoly in the market for the design and installation of new distribution line and service extensions, must be dismissed because Plaintiffs have not pled that a plausible

relevant product market exists, that Edison has market power within that market, or that Plaintiffs have suffered an antitrust injury. This claim also fails because Edison does not owe Plaintiffs a duty to enable them to serve as Applicant Designers or Installers.

*Second*, Plaintiffs fail to state a claim for intentional interference with prospective economic relations. Plaintiffs' claim is premised in part on alleged *truthful* communications between Edison and SCEF's customers, which is protected speech under the First Amendment. Plaintiffs' related claims are also deficient insofar as they are premised on conduct that occurred outside the statute of limitations, fail to demonstrate Edison's knowledge of, or intent to interfere with, Plaintiffs' relationships, or fail to plausibly allege that any purported interference was the reason third parties chose the services of firms other than SCEF. In any event, Plaintiffs have not shown that Edison's alleged conduct was independently wrongful.

*Third*, Plaintiffs' claim for intentional interference with contract fails for similar reasons—Plaintiffs have pled insufficient facts to show Edison knew about, much less intended to interfere with, SCEF's contracts. And to the extent a claim is adequately stated, it is time-barred.

*Fourth*, Plaintiffs fail to state a claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. Plaintiffs have not adequately alleged any predicate claim that would render Edison's conduct unlawful. Nor have they alleged unfair conduct. Plaintiffs' request for injunctive relief is also barred by this Court's previous Order.

The amended complaint should be dismissed in its entirety, and with prejudice.

## II.   **FACTUAL ALLEGATIONS**

Edison fired Plaintiffs in April 2017 under circumstances that Plaintiffs have not disclosed in their pleadings, but which led Edison to inform Plaintiffs they could

"never come back onto company property."  FAC ¶ 30.  Since then, Edison has been clear that it "is not required to conduct business with" Plaintiffs and has no desire to do so.  *Id.* ¶¶ 30, 43-46.

Undeterred, Plaintiffs founded SCEF.  *Id.* ¶ 33.  Plaintiffs admit they are not qualified to serve as Applicant Installers or Designers pursuant to what Plaintiffs refer to as Edison's "ADS Policy," but they nonetheless entered into eight contracts with third parties to provide them with Applicant Installation or Design services in the past five years (the "SCEF Tariff Contracts").  *See id.* ¶¶ 34-36.  Plaintiffs also appear to have built a lucrative business providing "consumers of Edison's electricity with consulting services relating to their electrical needs."  *Id.* ¶¶ 4, 39-40.[1]  Plaintiffs refer to the contracts relating to this consulting business as the "SCEF Consulting Contracts."  Plaintiffs' allegations regarding these two sets of contracts differ, so Edison addresses each in turn.

### A.   SCEF Tariff Contracts

Plaintiffs' allegations regarding the SCEF Tariff Contracts concern two ways individuals can connect to Edison's electricity system: Distribution Line Extensions and Service Extensions (together, "Extensions").  A Distribution Line Extension is a "continuation of, or branch from," an existing Edison Distribution Line—for example, the installation of electrical facilities on an individual's private property along with accompanying wiring connecting to Edison's permanent distribution lines.  A Service Extension is a service facility that extends from Edison's "Distribution Line" to a "Service Delivery Point," such as the connection between a

---

[1] Plaintiffs do not allege that Edison is its competitor in the market for these consulting services.

Distribution Line and a service panel on an individual's property.  *See* Electric Tariff Rule 16(H).[2]

A person within Edison's distribution territory who has requested that Edison supply electric service (in this context, an "Applicant") can either retain Edison to plan, design, and install Extensions or retain a contractor to design a new Extension ("Applicant Designer") or install one ("Applicant Installer").  This process is governed by Edison's Electric Tariff Rules 15 and 16—rules submitted to, and approved by, Edison's regulator, the California Public Utilities Commission ("CPUC").

The CPUC has set certain minimum contractor qualification requirements for Applicant Installers and affords utilities discretion to establish and enforce their own supplemental qualification requirements for Applicant Designers.  *See* Electric Tariff Rules 15(F)(3), 16(A)(1).  In July 2018, Edison adopted an internal qualification that Plaintiffs allege applies to both Applicant Designers and Installers, requiring that an individual who wishes to serve in either of these roles "must not have been terminated from [Edison] under a classification that makes them ineligible for rehire or ineligible to work on SCE assets or systems."  FAC ¶¶ 25, 35.[3]

In the past five years, Plaintiffs have entered into eight contracts with Edison's customers for "applicant design and install work that is governed by Edison's ADS Policy."  *Id.* ¶ 35.  Plaintiffs allege that, because that policy bars them from serving as Applicant Designers or Installers, they have retained subcontractors to perform work on these contracts on their behalf.  *Id.* ¶ 38.  They also allege

---

[2] Edison's Tariff Rules are available at Southern California Edison, *SCE Tariff Books,* https://www.sce.com/regulatory/tariff-books (last visited February 6, 2023).

[3] Bafflingly, Plaintiffs continue to highlight Section 2.7(A)(1) of Edison's Applicant Distribution Design Standards.  FAC ¶ 25.  But Plaintiffs' amended complaint provides no basis to believe this provision applies to them.

Edison has interfered with one of these contracts by delaying the approval of SCEF's subcontractor's application for design and installation services. *Id.* ¶ 77.

**B.    SCEF Consulting Contracts**

SCEF allegedly provides "consumers of Edison's electricity with consulting services relating to their electrical needs" and has entered into a number of contracts to provide these services. *Id.* ¶¶ 4, 39-40.

Plaintiffs allege that, almost five years ago, Edison informed Mike Davis Home Builders ("MD Home Builders")—a contractor for whom SCEF was providing consulting services—that Edison would not "honor SCEF work and would not communicate with anyone that works for SCEF," and, as a consequence, MD Home Builders would have to communicate directly with Edison. *Id.* ¶ 63. More recently, Plaintiffs allege that, after learning SCEF had to use subcontractors to complete the work for which it was retained in early 2022, Cypress Equity Investments, Inc. ("CEI") did not award SCEF several projects for which SCEF had submitted bids and informed SCEF that CEI would review its active contracts with SCEF, because it had "hired [SCEF] to work directly with [Edison]." *Id.* ¶¶ 65-67.

Plaintiffs provide no further support for their assertion that Edison has interfered with approximately 220 SCEF Consulting Contracts. Instead, the amended complaint simply asserts that Edison has instructed its employees not to communicate with Plaintiffs or their employees, informed owners and contractors it will not acknowledge SCEF's work or recognize the validity of any contracts with SCEF, instructed owners and contractors not to use SCEF, damaged SCEF's reputation by discussing Edison's past dealings with SCEF with SCEF's customers, and interfered with work on SCEF's projects. *Id.* ¶ 42.

**III.   ARGUMENT**

**A.    Plaintiffs' Sherman Act Claim Should Be Dismissed.**

Plaintiffs allege Edison has unlawfully maintained monopoly power in the "market for the design and installation of new distribution line and service

extensions," *id.* ¶ 55, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by limiting their ability to serve as Applicant Designers and Installers.  But Plaintiffs' alleged "market" is, once again, so facially implausible as to require the rejection of their antitrust claims.  Further, Plaintiffs have failed entirely to allege that Edison wields monopoly power *within* the relevant market they have pled—the *sine qua non* of a Section 2 claim—or that they have suffered an antitrust injury.  Finally, Plaintiffs' claim is barred by *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) ("*Trinko*").

### 1.    Plaintiffs Have Failed to Adequately Plead a Relevant Product Market.

Establishing the relevant market, including the relevant product market, in which a defendant's allegedly anticompetitive actions took place, is a "threshold step in any antitrust case."  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020).  "[D]efining [a relevant] product market involves identification of the field of competition: the group or groups of sellers or producers who have [the] actual or potential ability to deprive each other of significant levels of business."  *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).  A product market is properly pled where "an increase in the price of one product [in the putative product market] leads to an increase in demand for another."  *Olin Corp. v. FTC*, 986 F.2d 1295, 1298 (9th Cir. 1993).  But the relevant product market that Plaintiffs have pled—the "market for the design and installation of new distribution line and service extensions," FAC ¶ 55—is facially unsustainable.  Therefore, this Court must dismiss Plaintiffs' Sherman Act claim. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable.").

Applicant Designers and Installers provide two very different services. Applicant Designers, as the name implies, *design* Extensions.  *See* Electric Tariff

Rule 15(F).  Applicant Installers, by contrast, are responsible for "installing cables, switches, transformers and other distribution facilities required to complete" an Extension.  Electric Tariff Rule 15(B)(1)(b); *see also* Electric Tariff Rules 15(G), 16(D)(3)(b).  The qualifications for these roles are also materially different. *Compare* Electric Tariff Rule 15(F) (Applicant Designers), *with* Electric Tariff Rules 15(G), 16(D)(3)(b) (Applicant Installers).  For example, work performed by an Applicant Designer must be performed "by or under the direction of a licensed professional engineer."  Electric Tariff Rule 15(F).  By contrast, an Applicant Installer need only be "licensed in California for the appropriate type of work (electrical and general, etc.)."  Electric Tariff Rule 15(G)(2); *see also* Electric Tariff Rule 16(D)(3)(b).

Despite these differences, Plaintiffs have combined these functions into an overbroad single product market for "the design and installation of new distribution line and service extensions for electricity to connect new consumers to existing grids."  FAC ¶ 55.  But there is no reason to believe that their competitive dynamics are the same.  These markets may in fact differ significantly with respect to the number of individuals or firms competing with both SCEF and Edison within them, their barriers to entry, and the ease with which Edison's or SCEF's competitors can take market share from either Edison or SCEF.  *See Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995) (describing relevant features of a relevant market for purposes of a Sherman Act claim).  And, crucially, there is also *no reason* to think that if the price of designing a new Distribution Line Extension goes up a consumer will increase their demand for an Applicant Installer's services, or vice versa, as the design of new Distribution Line Extensions is not a substitute for the installation of those same lines—no customer who desires the installation of new electrical service would choose to merely *design* a new electrical connection as an

alternative.  This "facial implausibility" dooms Plaintiffs' Sherman Act claim.[4]  *See Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1023 (N.D. Cal. 2021) (rejecting proposed relevant markets such as "[s]hared memory access" and "local cache management" because plaintiffs had "effectively asserted as the product market a general technical field"); *Rock v. Nat'l Collegiate Athletic Ass'n*, 928 F. Supp. 2d 1010, 1022 (S.D. Ind. 2013) (holding that a market of "all student-athletes" was impermissibly broad because it failed to account for "germane differences such as gender and sport played").

### 2.  Plaintiffs Have Failed to Plead Edison Has Market Power in the Relevant Market.

"[T]o state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power" within a properly defined relevant market. *Newcal*, 513 F.3d at 1044.  Plaintiffs' amended complaint fails to satisfy this threshold requirement.

Typically, a plaintiff establishes that a defendant has monopoly power in the relevant market for purposes of a Section 2 claim by alleging facts to support a showing, among other things, that the defendant owns a dominant share in the alleged relevant market.  *See Rebel Oil Co.,* 51 F.3d at 1434 (describing means of proving market power); *Westlake Servs., LLC v. Credit Acceptance Corp.*, No. 15-07490, 2015 WL 9948723, at *6 (C.D. Cal. Dec. 7, 2015) (same).[5]  Plaintiffs' allegations regarding Edison's purported market share in the market for the design

---

[4] These requirements are substantive, not merely technical.  Without a properly defined market, Plaintiffs will necessarily be unable to prove other essential elements of their claim—market power, for example, is a nonsensical concept without a proper, narrowly defined relevant market.

[5] A plaintiff must also allege that there are significant barriers to entry in that market, and that existing competitors within the relevant market lack the capacity to increase their output in the short run.  Plaintiffs' amended complaint similarly lacks sufficient facts to demonstrate that the relevant market has these characteristics.

and installation of new distribution line and service extensions fall woefully short of this requirement.

Plaintiffs' amended complaint alleges in a conclusory fashion that Edison has a "dominant share of the Relevant Product Market amounting to *at least* 75%." FAC ¶ 52.  Plaintiffs offer no basis supporting that assertion.  *Twombly* forbids this kind of generic "recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Westlake Servs.*, 2015 WL 9948723, at *6 (dismissing complaint that failed to allege facts in support of allegation that the defendant "maintain[ed] the predominant market share of and market power in the Relevant Market"); *McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, No. 08-00080, 2008 WL 2437739, at *8 (D. Haw. June 17, 2008) ("Plaintiff must assert some factual predicate to support its assertion that Defendant enjoys market power in the relevant market.").

Plaintiffs' allegation that Edison has a market share of "at least 75%" in the market for the design and installation of new Extensions appears to be a *supposition* based on Edison's alleged monopoly power in an entirely different market—the market for generating and transmitting electricity in Edison's service area.[7] Plaintiffs allege that Edison is the sole "electric utility provider that generates, transmits and distributes electricity" in the Relevant Geographic Market.  FAC ¶ 18. It also alleges that *because of that "possession of monopoly power in the Relevant Geographic Market*, [Edison] thus own[s] and control[s] a dominant share of the Relevant Product Market." *Id.* ¶ 52 (emphasis added).[6]  That allegation is not

---

[7] During meet and confer discussions prior to the filing of this Motion, Plaintiffs acknowledged that this is the case.

[6] Plaintiffs' attempt to disaggregate the relevant geographic and relevant product markets confuses the relevant analysis.  A relevant market "has two components: the product market and the geographic market."  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1392 (9th Cir. 1984).  It is in this

logical—Plaintiffs do not explain why Edison's alleged monopoly in the market for generating and transmitting electricity necessarily means that it will have any particular market share in the market for designing and installing new Extensions, much less one greater than 75%. And it makes no sense that this would be the case; Edison's qualification policies allow for numerous other firms to design and install new Extensions and thus to gain and hold market share. Plaintiffs are prevented from doing so only because they are former Edison employees discharged for misconduct serious enough that Edison barred them from its property and chooses not to do further business with them as a result. Moreover, the Ninth Circuit has found it improper to infer that market power in one market will result in a particular market share in another, wholly separate market. *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972-73 (9th Cir. 2008) (finding that allegations relating to defendant's market power in retail gasoline market were irrelevant for purposes of assessing power in the relevant gasoline franchise market).

In rare cases, a plaintiff can also show that a defendant has monopoly power in the relevant market via direct evidence of market power. But this is not such a case. Direct evidence of market power requires, at a minimum, a showing of "restricted output and supracompetitive prices" within the relevant market. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2008); *see Shields v. Fed'n Internationale de Natation*, No. 18-07393, 2023 WL 121985, at *13 (N.D. Cal. Jan. 6, 2023) (discussing direct evidence standard). Plaintiffs' amended complaint contains no factual allegations suggesting that Edison's conduct has increased prices in the relevant market or that Edison's allegedly anticompetitive conduct—refusing to enable Plaintiffs to serve as Applicant Designers or Installers—is a function of Edison's power *within* the market for the

---

combined "relevant market" in which a litigant must plead that a defendant has market power.

design and installation of new Extensions.  As a consequence, Plaintiffs' pleading lacks any direct evidence that Edison has market power in the market for the design and installation of new distribution line and service extensions.  *See Top Rank, Inc. v. Haymon*, No. 15-4961, 2015 WL 9948936, at *7-9 (C.D. Cal. Oct. 16, 2015) (noting that allegations of exclusionary conduct, in the absence of allegations "plausibly suggesting restricted output or supracompetitive prices in the [relevant market]," were not direct evidence of market power).

### 3.   The Sherman Act Does Not Obligate Edison to Work with Plaintiffs.

Even if Plaintiffs had adequately alleged that Edison has monopoly power within Plaintiffs' alleged relevant market, Plaintiffs still cannot prevail on their Sherman Act claim.  Plaintiffs ask this Court to force Edison to authorize them to serve as Applicant Designers and Installers.  That would not just require that Edison waive its ADS Policy, but also require Edison to review and approve applications and other paperwork submitted by Plaintiffs, *see* FAC ¶¶ 47-48, 77, and, at a minimum, perform a plan check for each of Plaintiffs' Applicant Design projects, *see* Electric Tariff Rule 15(F)(5).  Such obligations—and other obligations not captured by Plaintiffs' amended complaint—should not be imposed lightly because, "as a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *Pac. Bell Tel. Co. v. LinkLine Commc'ns*, 555 U.S. 438, 448 (2009).  The facts alleged in Plaintiffs' amended complaint provide no occasion to deviate from this bedrock principle of antitrust law.

The Supreme Court's decision in *Trinko* is instructive and controlling.  The Telecommunications Act of 1996 required Verizon to "facilitate market entry by competitors" by imposing on Verizon an obligation to, among other things, provide its competitors with "access to [its] operations support systems."  *Trinko*, 540 U.S. at 401, 403.  A customer of one of Verizon's competitors brought suit alleging that

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Verizon had violated Section 2 of the Sherman Act by filling its rivals' orders for access to its operations support systems too slowly as "part of an anticompetitive scheme to discourage customers from becoming or remaining customers" of its competitors. *Id*. at 404.  The Supreme Court upheld the dismissal of that plaintiff's complaint, reiterating the "high value that [the Supreme Court has] placed on the right [of a corporation] to refuse to deal with other firms." *Id*. at 408 (citation and internal quotation marks omitted).

The Supreme Court stressed that it would be particularly inappropriate for a court to find Verizon's alleged failure to adequately assist a rival gave rise to a claim under the Sherman Act because the sharing obligation at issue was "something brand new"—a product of the 1996 Telecommunications Act—rather than a service or product that Verizon had offered prior to the passage of the Act. *Id.* at 410 (citation omitted).  The same reasoning applies here.  Prior to 1985, Edison was not required to permit third parties to install or design Extensions *at all*. *See In re Competitive Bidding Tariff Language*, 1985 WL 1204993 (Cal. PUC. Aug. 21, 1985).  Absent the CPUC's intervention, the Sherman Act would have provided no basis for altering that state of affairs.  *See Cavalier Tel., LLC. v. Verizon Va., Inc.*, 330 F.3d 176, 187-88 (4th Cir. 2003) ("[T]he antitrust laws alone do not require legitimate monopolies to give up their monopolies or to help competitors."). Plaintiffs thus cannot rely on the Sherman Act to force Edison to enable them to serve as Applicant Designers or Installers.

### 4.    Plaintiffs Have Not Alleged Antitrust Injury.

To prevail on a Sherman Act monopolization claim, a plaintiff must allege "antitrust injury," which requires showing "(1) unlawful conduct, (2) causing an injury to the plaintiffs, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 967 (9th Cir. 2013).  Plaintiffs do not meet this standard because they allege only that a *competitor* (SCEF) was excluded from the market,

not that *competition* itself was harmed.  The antitrust laws concern only the latter. *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508-09 (9th Cir. 1989) (noting that "removal of one or a few competitors need not equate with injury to competition" absent evidence that alleged conduct has been "unreasonably disruptive of market functions"); *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 21-00540, 2022 WL 2791201, at *12 (E.D. Cal. July 15, 2022) (finding that conclusory references to increased prices and reduced quality did not suffice to allege antitrust injury).  The amended complaint is wholly devoid of allegations suggesting that Edison's actions have raised prices in the relevant market or impacted any other competitor therein in a manner that concerns the antitrust laws. Even if they had, such harm could not flow from unlawful conduct or conduct the antitrust laws were intended to prevent, because *Trinko* makes clear that Edison's conduct is appropriate under antitrust law.

## B.   Plaintiffs' State Law Claims Should Be Dismissed.

### 1.   Plaintiffs' Claim for Intentional Interference with Prospective Economic Relations Fails.

To state a claim for intentional interference with prospective economic relations, Plaintiffs must plausibly plead, among other things, "the defendant's knowledge of the relationship" between "plaintiff and some third party" which "contains the probability of future economic benefit to the plaintiff," and "intentionally wrongful acts designed to disrupt the relationship" which causes "actual disruption" of the relationship. *Trendmood, Inc. v. Rabinowitz*, No. 20-10877, 2021 WL 5277441, at *5 (C.D. Cal. Aug. 31, 2021) (citation omitted). Plaintiffs have not made this showing.  *First*, to the extent Plaintiffs' claim is premised on Edison's communications with SCEF's customers, it is barred by the First Amendment.  *Second*, Plaintiffs allege only two specific instances of tortious interference, and both sets of allegations present problems: one falls outside the statute of limitations, the other provides no indication Edison even knew about

Plaintiffs' economic relationship, let alone intended to disrupt it or engaged in any wrongful acts that *did* disrupt it.   *Third*, Plaintiffs have failed to plausibly plead that any such intentionally wrongful acts "proximately cause[d]" Plaintiffs "economic harm," as they must.  *Id.*  *Fourth*, Plaintiffs have not adequately alleged that Edison's conduct was independently wrongful.  *Finally*, with the exception of the Plaintiffs' two defective allegations of tortious interference described above, Plaintiffs' assertion that Edison interfered with certain relationships is wholly devoid of any factual allegations that would support a claim of intentional interference.

> (a)   *The First Amendment Bars Plaintiffs' Claim Based on Edison's Communications with SCEF's Customers.*

To the extent Plaintiffs' intentional interference claim is premised on Edison's alleged communications with SCEF's customers, it must be dismissed, as any such communications are protected by the First Amendment.  For instance, Plaintiffs allege that Edison interfered with their relationship with MD Home Builders by "contact[ing] [them] to let them know that Edison would not honor SCEF work and would not communicate with anyone that works for SCEF."  FAC ¶¶ 62-63.  But the First Amendment bars tort claims for intentional interference based on speech that communicates "truthful information and opinions about [the plaintiff's] business."  *See Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1542, 1545 (1991), *modified* (Dec. 11, 1991).  To the extent Plaintiffs allege Edison conveyed similar information to SCEF's customer CEI or shared Edison's past experiences with Plaintiffs with SCEF's customers, that speech was protected as well.  *See* FAC ¶ 66.  Edison's alleged truthful communications with SCEF's customers about Edison's policies or its prior dealings with Plaintiffs cannot form the basis of tort liability.  *See Baez v. Pension Consulting All., Inc.,* No. 17-01938, 2017 WL 9500979, at *5 (C.D. Cal. July 20, 2017) ("[U]nder California law, a statement is not actionable if it is true or privileged.").

(b)     *Plaintiffs' Claim Arising from Their Relationship with MD Home Builders Is Time-Barred.*

A two-year statute of limitations applies to intentional interference claims, running from the time of "the underlying harmful act." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 810 (9th Cir. 2007). Plaintiffs allege Edison intentionally interfered *five* years ago by informing MD Home Builders in February 2018 that Edison "would not honor SCEF work and would not communicate with anyone that works for SCEF." FAC ¶ 63. This claim, in addition to being barred by the First Amendment, is time-barred.

(c)     *Plaintiffs Have Failed to Allege that Edison Intended to Interfere with Their Relationship with CEI.*

Plaintiffs' amended complaint does not plausibly allege Edison knew about Plaintiffs' relationship with CEI or engaged in intentionally wrongful conduct designed to interfere with it. Plaintiffs allege only that "CEI was made aware that SCEF had to use subcontractors to complete its work with CEI"—not that *Edison* was the one to make this fact clear to CEI. *Id*. ¶ 66. Moreover, when Plaintiffs allegedly entered into contracts with CEI in early 2022, Plaintiffs had been using subcontractors to complete its work for *years* because they knew Edison would not work directly with them, a fact they appear to have kept from CEI. *See id.* ¶ 44. Edison is not liable in tort for Plaintiffs' decision to enter into contracts under false pretenses.

Plaintiffs also cannot show Edison knew about their relationship with CEI when Edison enacted its alleged policy of not working with SCEF, much less that Edison *designed* that policy intending to disrupt their relationship. To state a claim for intentional interference, they must do both. Both of those elements presuppose that the relevant economic relationship between Plaintiffs and CEI existed *before* the alleged interference. Edison's challenged policy was allegedly in place by February or March 2018—*years* before Plaintiffs' relationship with CEI. *See id.*

¶¶ 43-44.  At that time, Edison could not have known about, let alone intended to interfere with, a relationship that did not yet exist.

                            *(d)*      *Plaintiffs Have Not Established that Edison's Alleged Interference Kept Them from Winning Further CEI Contracts.*

      "[A] threshold causation requirement exists for maintaining a cause of action for" intentional interference—"namely, proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference."  *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).  This requirement "precludes recovery for overly speculative expectancies."  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996).  Plaintiffs allege "CEI told SCEF they had several more projects developing and requested proposals from SCEF."  FAC ¶ 66.  Plaintiffs have not established that it is probable CEI would have awarded contracts for those projects to SCEF *but for* Edison's alleged conduct. Plaintiffs have simply pled that "CEI did not award SCEF the three projects" "[a]fter CEI was made aware that SCEF had to use subcontractors to complete its work with CEI."  *Id.*  One thing may have temporally followed the other, but there is no evidence to suggest that Edison's alleged policy "proximately caused" the alleged economic harm to Plaintiffs.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).  There could be a number of other reasons those projects went to other firms, including the fitness of the other firms, none of which would be attributable to Edison.  Any expectancy Plaintiffs had in those projects was inherently speculative and thus does not support a claim for tortious interference.

                            *(e)*      *Plaintiffs Have Not Adequately Pled that Edison's Conduct Was Independently Wrongful.*

      Plaintiffs cannot state a claim for intentional interference with prospective economic relations without any other viable legal claim for wrongful conduct. Plaintiffs must establish that "[Edison] not only knowingly interfered with [their]

expectancy, but engaged in conduct that was *wrongful by some legal measure* other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995) (emphasis added). "An act is independently wrongful 'if [it] is . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" *Condos v. Condos*, No. 04-7365, 2007 WL 9698295, at *5 (C.D. Cal. Oct. 16, 2007). Because Plaintiffs have not adequately pled Edison engaged in conduct that was unlawful, their claim must be dismissed. *See United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1012 (9th Cir. 2014) (finding that, where plaintiff's "assertion of independent wrongfulness is based on [its] antitrust claims," the dismissal of those claims "dooms" its claim for intentional interference with prospective economic relations); *Standard Furniture Mfg. Co., Inc. v. LF Prod. Pte. Ltd.*, No. 16-02097, 2017 WL 3082221, at *7 (C.D. Cal. June 13, 2017) (dismissing claim for intentional interference with prospective economic advantage because plaintiff failed to establish wrongfulness by reference to the UCL).

    (f) *Plaintiffs' Vague Allegations About Other Unspecified Relationships Cannot Form the Basis for an Intentional Interference Claim.*

  MD Home Builders and CEI are the only SCEF customers specifically identified as the basis for Plaintiffs' intentional interference with prospective economic relations claim. FAC ¶¶ 62-67. To the extent that claim is premised on relationships with any unnamed customers, it is a non-starter. As to such other customers, the amended complaint alleges only that "SCEF had a beneficial relationship with third-parties in the SCE territory, including without limitation landowners and contractors associated with the SCEF Consultant Contracts and the SCEF Tariff Contracts," and that "SCEF's prospective contracts include, *among others*, contracts with" MD Home Builders and CEI. FAC ¶¶ 61-62 (emphasis added). Those allegations are not sufficient to establish the existence of additional economic relationships between Plaintiffs and third parties that contain the

probability of future economic benefit to Plaintiffs.  *See Westside Ctr. Assocs.,* 42 Cal. App. 4th at 527 (explaining that plaintiff must supply a "factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit").  However, even assuming *arguendo* that they were, Plaintiffs still have not alleged that Edison was aware of the existence of each (unidentified) relationship or intended to interfere with it, nor have they alleged what intentionally wrongful conduct Edison engaged in with respect to each relationship or what economic harm was done.

### 2.   Plaintiffs' Claim for Intentional Interference with Contract Fails.

Plaintiffs' claim for intentional interference with contract fails to plausibly allege Edison's knowledge of "a valid contract between plaintiff and a third party," much less Edison's "intentional acts designed to induce breach or disruption of the contract."  *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008).  The claim must be dismissed as a result.

#### (a)   *Plaintiffs Have Not Plausibly Pled that Edison Knew About SCEF's Contracts.*

Plaintiffs allege only that "Edison was aware of SCEF's contractual relationships and its business expectations."  FAC ¶ 75.  However, "[P]laintiff[s] fail[] to plead any facts . . . suggesting how or why [Edison] would have a basis for knowing" about those contracts.  *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.,* 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021) (finding allegation that "Defendant knew or should have known of the valid contracts existing between Plaintiff and its partners, including licensees" was insufficient to state a claim).  Plaintiffs' conclusory allegation is insufficient to establish that Edison had the requisite knowledge of the contracts between Plaintiffs and third parties, particularly when Plaintiffs have pled the existence of at least 220 SCEF Consulting Contracts and 8

SCEF Tariff Contracts.[7]  *See* FAC ¶¶ 35-36, 39-40.  Because Plaintiffs' only attempt to show the requisite knowledge by Edison is little more than a legal conclusion that the requirement has been satisfied, "[it is] not entitled to the assumption of truth" and does not satisfy the pleading standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

> (b)   *Plaintiffs Have Not Shown that Edison Intended to Interfere with SCEF's Contracts After Mid-2018.*

Plaintiffs cannot establish Edison intentionally disrupted SCEF's contracts, as needed to state a viable claim.  Plaintiffs' bare, conclusory allegation that an Edison employee "intentionally interfered" with an application submitted by one of Plaintiffs' subcontractors, which lacks sufficient detail regarding the date or nature of that interference, cannot adequately allege the requisite intent to make out an intentional interference claim.  *See* FAC ¶ 77; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Moreover, Plaintiffs allege that Edison's disruptive conduct was refusing to work with Plaintiffs or allow Edison employees to interact with them—a policy Edison allegedly put in place prior to mid-2018.  *See* FAC ¶¶ 25, 43-44.  Plaintiffs thus cannot allege Edison intentionally interfered with any contracts entered into *after* mid-2018.  After all, Edison's alleged decision to enact this policy cannot have been intended to disrupt contracts that did not exist at the time.

> (c)   *Plaintiffs Are Time-Barred from Bringing a Claim Based on Interference with Pre-2018 Contracts.*

By the time Plaintiffs filed their initial complaint in June 2022, they were time-barred from bringing a claim for intentional interference with respect to any

---

[7] Indeed, Plaintiffs redacted all identifying information for more than half of the 228 alleged contracts they listed "to prevent Edison from using this sensitive information to cause further frustration to SCEF's performance."  FAC ¶ 36 n.1.  If Edison already knew about these contracts, Plaintiffs would not have tried to prevent Edison from learning about them through their pleading.

contracts that had begun performance by June 2020.  The limitations period for such a claim is two years and begins to run when all its elements are satisfied.  Cal. Civ. Proc. § 339; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).  The only disruption and damages to their contracts Plaintiffs claim is that they had to add subcontractors, which made performance more expensive.  FAC ¶¶ 47-48.  But for any contracts SCEF entered into by mid-2018—the only potentially relevant contracts here—they would have begun adding subcontractors before mid-2020.  *See id.* ¶ 47.  Plaintiffs would therefore have been aware by June 2020 that all the elements of their intentional interference claim were satisfied with respect to those contracts, and so any claim of interference with those contracts is time-barred.

Between this statute of limitations issue for contracts executed *before* mid-2018, and Plaintiffs' inability to plausibly plead that Edison could have intended to interfere with contracts that did not exist until *after* mid-2018, the entirety of Plaintiffs' claim for intentional interference with contract is doomed.

### 3.   Plaintiffs Have Not Stated a Claim for Unfair Competition.

Plaintiffs allege in conclusory fashion that Edison violated the UCL by engaging in "unlawful, unfair, dishonest, deceptive, and destructive business acts and practices," FAC ¶ 82, which evinces an intent to state a claim under the "unlawful" and "unfair" prongs of this statute.[11]  Plaintiffs' allegations are deficient as to each prong.

#### (a)   *Unlawful Prong – SCEF Tariff Contracts and SCEF Consulting Contracts*

Because Plaintiffs' Sherman Act and tort law claims are deficient for the reasons set forth above, Plaintiffs' claim under the unlawful prong must be

---

[11] Plaintiffs' amended complaint omits any reference to the "fraudulent" prong of the UCL.  That is for good reason.  Plaintiffs' allegations fall far short of the particularity required to satisfy Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (applying Fed. R. Civ. P. 9(b) to UCL fraud claim).

1  dismissed.  *See* Order Granting Defendant's Motion to Dismiss at 24-25, *So. Cal.*
2  *Electrical Firm v. So. Cal. Edison Co.*, No. 22-00968, (C.D. Cal. Jan. 10, 2023),
3  ECF No. 31 ("Order").

4                  *(b)*      *Unfair Prong – SCEF Tariff Contracts*

5        When a plaintiff who claims to have suffered injury from a direct competitor
6  alleges the same conduct supports both a "federal antitrust claims and a state-law
7  unfair competition claim, a finding that the conduct is not an antitrust violation
8  precludes a finding of unfair competition." *Id.* at 25.  Plaintiffs' Sherman Act claim,
9  which is premised on the same facts as their UCL unfairness claim with respect to
10  the SCEF Tariff Contracts, thus dictates the fate of their claim under the "unfair"
11  prong of the UCL.

12                  *(c)*      *Unfair Prong – SCEF Consulting Contracts*

13        Plaintiffs also fail to state a claim under the "unfair" prong of the UCL with
14  respect to the SCEF Consulting Contracts.  The standard applied by courts assessing
15  such a claim when it is not brought by a direct competitor is in flux.  *See Nazemi v.*
16  *Specialized Loan Servicing, LLC*, No. 22-05006, 2022 WL 17220707, at *4 (C.D.
17  Cal. Oct. 31, 2022).  No matter what test this Court applies, however, Plaintiffs'
18  claim that Edison's actions violate the "unfair" prong must be dismissed.

19        Edison is not required to work with Plaintiffs to ensure the success of
20  Plaintiffs' consulting business.  *See Drum v. San Fernando Valley Bar Ass'n*, 182
21  Cal. App. 4th 247, 254 (2010) ("Absent a legal provision to the contrary, a private
22  party generally may choose to do or not to do business with whomever it pleases.").
23  And it is certainly neither unfair nor improper that Edison, after firing Plaintiffs
24  under circumstances that led them to bar Plaintiffs from ever entering Edison's
25  property again, has elected not to interact with Plaintiffs absent a legal obligation to

26
27
28

do so, and informed others of that decision.[8]  *See Scripps Clinic v. Superior Ct.*, 108 Cal. App. 4th 917, 937 (2003) (finding that medical practice's policy of terminating medical care for patients and their families after receipt of an intent to sue letter was not unfair).  This is particularly true where, as here, Plaintiffs have not alleged that Edison's actions have substantially harmed consumers.  *See Lease Outlet, Inc. v. U.S. Bank*, No. 09-00108, 2011 WL 13175978, at *4 (C.D. Cal. Jan. 19, 2011) (concluding that refusal to accept leasing financing applications executed by plaintiff was not unfair where plaintiff failed to present any evidence that defendant's refusal to do business with plaintiffs harmed consumers; *L&M Tire Co., Inc. v. Goodyear Tire & Rubber Co.*, No. 12-02720, 2013 WL 12157581, at *5 (S.D. Cal. Jan. 11, 2013) (holding that conflict between two parties absent evidence of consumer harm did not state a claim under the UCL's "unfair" prong).

Moreover, the only relief Plaintiffs seek for this cause of action is a "preliminary and permanent injunction enjoining Edison from continuing its unfair and unlawful business practices, including, without limitation, prohibiting Edison from implementing unreasonable prequalification requirements against SCEF and related entities."  FAC at 28.  That relief both relates only to Plaintiffs' allegations with respect to the SCEF Tariff Contracts and would be improper because requiring Edison to allow Plaintiffs to serve as Applicant Designers or Installers, without regard to existing prequalification requirements, would circumvent the CPUC's determination that there should be prequalification requirements to ensure a minimum level of competency for those roles.  *See* Order at 17.

---

[8] As noted in Section III.B.2, Plaintiffs have failed to allege Edison interfered with the SCEF Consulting Contracts, which similarly precludes a finding that Edison's actions with respect to these contracts are "unfair."

IV.   **CONCLUSION**

Edison respectfully requests that the Court dismiss Plaintiffs' amended complaint, with prejudice.

DATED:  February 7, 2023          MUNGER, TOLLES & OLSON LLP


By:   */s/ Kyle W. Mach*
KYLE W. MACH
BRAD D. BRIAN
ERIN J. COX
LAUREN E. ROSS
MIRANDA E. REHAUT
Attorneys for Defendant SOUTHERN
CALIFORNIA EDISON COMPANY

1

**CERTIFICATE OF COMPLIANCE**

2      Counsel of Record hereby certifies that pursuant to Rule 11-6.1 of the Central

3    District of California Rules of Court, the enclosed brief is no more than 25 pages in

4    length and contains approximately 6,892 words, which is less than the total words

5    permitted by the rules of court.  Counsel relies on the word count of the computer

6    program used to prepare this brief.

7

8    DATED:  February 7, 2023          MUNGER, TOLLES & OLSON LLP

9

10

11                                    By:    /s/ Kyle W. Mach
                                            _____
12                                          KYLE W. MACH
                                            BRAD D. BRIAN
13                                          ERIN J. COX
                                            LAUREN E. ROSS
14                                          MIRANDA E. REHAUT
                                            Attorneys for Defendant SOUTHERN
15                                          CALIFORNIA EDISON COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28